# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| SEAN YOUSAF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:18-cv-00321-DGK |
| | ) |
| THE CURATORS OF THE UNIVERSITY | ) |
| OF MISSOURI, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER GRANTING MOTION TO DISMISS

This lawsuit arises from Plaintiff Sean Yousaf's dismissal from the University of Missouri at Kansas City School of Dentistry ("the SOD") for failing grades, amidst accusations of cheating. The Complaint alleges the SOD and various faculty members and school officials committed breach of contract, violated Plaintiff's due process rights and various civil rights laws, and also committed various torts.

Now before the Court is Defendants' motion to dismiss (Doc. 16) for failure to state a claim.[1]

### Standard of Review

A claim may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff [ ]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

---
[1] Although the motion also posits lack of subject-matter jurisdiction, apparently in conjunction with various claims about Defendants immunity, the Court considers these arguments in the context of Rule 12(b)(6).

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Id.*

In reviewing the complaint, the court construes it liberally and draws all reasonable inferences from the facts in the plaintiff's favor. *Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 961 (8th Cir. 2009). The court generally ignores materials outside the pleadings but may consider materials that are part of the public record or materials that are necessarily embraced by the pleadings. *Miller v. Toxicology Lab. Inc.*, 688 F.3d 928, 931 (8th Cir. 2012).

## Background

The following summary is distilled from the sixty-seven page Complaint (Doc. 1) and the fifteen exhibits (Doc. 1-1 to Doc. 1-15) totaling 196 pages attached to it. These exhibits include SOD handbooks and policy manuals, summaries from an investigation into the cheating accusations conducted by the University, and emails Plaintiff exchanged with various administrators. Ironically, some of the exhibits undermine the Complaint's allegations.

The Complaint contains nineteen counts[2] and makes a variety of wordy assertions and conclusions, a few of which are unrelated to this case.[3] The Complaint is occasionally vague and

---

[2] Count 20 is a request for emergency and preliminary injunctive relief.

[3] For example, Count One, "Violation of Academic Policies (SOD)," asserts the following:

> 77. Students are protected from deviation from information advertised in the following documents: registration materials, manuals, course catalogues, bulletins, circulars, regulations, class syllabi, student codes, and handbooks.
>
> 78. Such rights include, without limitation, (1) the right to a continuous contract during a period of enrollment, without a change in degree requirements, (2) the right to retain property and copyright for results of research, artistic creation and innovation unless contracts exist, (3) the right to participate in programs and services in accordance with advertised program objectives, (4) the right to be evaluated in accordance with advertised curriculum evaluation

2

confusing; differently numbered counts are sometimes similarly named and make essentially the same allegations. For example, Count 1, "Violation of Academic Policies (SOD)," asserts that the SOD violated Plaintiff's due process rights by refusing to allow him to proceed on his grade appeals. Compl. ¶¶ 141-43. Count 6, "Violation of Academic Policies Relating to Final Grades (SOD)," alleges Plaintiff's final grades were "arbitrary, capricious, and/or in bad faith" because Plaintiff was preempted from proceeding with his grade appeals. Compl. ¶¶ 289-92. Although the Complaint is at times difficult to follow, the Court has reviewed it and the materials attached to it in the light most favorable to the Plaintiff and finds the facts relevant to the pending motion to be as follows.

In early 2018, Plaintiff was dismissed from the SOD for poor academic performance. During the Fall 2017 academic semester, Plaintiff had received failing grades from two instructors, Defendants Dr. Donna Deines and Dr. Lance Godley, and a grade of "No Credit" from Dr. Deines in a third class. Dr. Godley also alleged Plaintiff had cheated on a re-test of a practical exam.[4]

Plaintiff faced dismissal for academic reasons pursuant to academic standards and policies at the SOD, which provide that any student who fails more than one course in any

---

criteria, and (5) the right to be evaluated with criteria in line with advertised course objectives.

79. These documents may be binding implied-n-fact contracts.

80. Furthermore, verbal contracts are binding in Higher Education settings.

These assertions are puzzling not just because they are legal claims, but because they are legal claims that are unrelated to the issues in this lawsuit. This lawsuit, or example, is not a dispute over whether Plaintiff had a "right to retain property and copyright for results of research, artistic creation and innovation."

[4] Exhibit 10 is the summary of an investigation into the cheating allegations by the Assistant Dean for Student Programs, Defendant Richard Bigham. The investigation reports that this was not the first time Plaintiff had been accused of cheating: He was caught cheating on an undergraduate biology exam in 2012. He received an "F" in that course and an official warning letter. SOD Honor Council Incident Summary at 3 (Doc. 1-10).

semester will be dismissed.  He also faced potential discipline by the SOD Honor Council for allegedly cheating.

On December 14, 2017, the SOD Honor Council advised Plaintiff that it had decided to go forward with an official hearing on Dr. Godfrey's cheating allegation.  On December 19, 2017, the Honor Council set a hearing date for January 17, 2018.  Plaintiff requested twice that the Honor Council hearing be continued.  Both requests were granted.  The hearing was eventually reset to February 21, 2018.

On December 22, 2017, the Associate Dean for Academic Affairs, Defendant Pam Overman, sent Plaintiff a letter informing him that his academic performance in the Fall 2017 semester had resulted in his dismissal from the SOD.  It advised him that he had a right to appeal his dismissal to the Academic Standards Committee, which was scheduled to meet on January 31, 2018.  It also stated the following:

> Should you believe that any of the grades resulting in your dismissal were derived capriciously (the definition of which may be found in chapter 2 of the School of Dentistry Student Handbook), you also have the option of pursuing a grade appeal as part of your dismissal appeal.  Please be advised that the first step of the grade appeal process is to discuss the course grade fully with the course instructor.  This must be done within seven (7) calendar days after the beginning of the Spring 2018 semester (which begins on Tuesday, January 16).
>
> If the matter cannot be resolved by consultation with the course instructor, and you still wish to continue the grade appeal process, you will need to submit a written request for a hearing to me within seven (7) calendar days following denial by the course instructor.  The request will need to give the reasons for the grade appeal (i.e. how the assigned grade was derived capriciously) and provide relevant information.

Dismissal Notice at 1 (Doc. 1-9).  Although the Complaint asserts Plaintiff "initiated . . . the Grade Appeal as directed by the . . . Dismissal Notice," Compl. ¶ 40, nothing in the voluminous exhibits attached to the Complaint corroborate this bare assertion.

4

On January 31, 2018, the Academic Standards Committee held a hearing to determine whether dismissal was appropriate due to his failing grades. Plaintiff presented his case for readmittance, and Drs. Deines and Godley testified. Following the hearing, the Committee recommended that Plaintiff not be readmitted. The Honor Council never held a hearing regarding the cheating allegations.

On April 27, 2018, Plaintiff filed the pending lawsuit. On November 7, 2018, the Court denied Plaintiff's request for a preliminary injunction (Doc. 49). Among other holdings, the Court ruled that Plaintiff was unlikely to succeed on the merits.

## Discussion

**I.  All counts premised on Plaintiff having initiating a grade appeal before January 23 are dismissed for failure to state a claim.**

Counts 1, 2, 4, 5, 6, 7, 8, 17, 18, and portions of Counts 11 and 16 rest on the assertion that Plaintiff initiated a grade appeal before the deadline to do so expired. It is doubtful that the conclusory allegation in paragraph 40 that Plaintiff "initiated . . . the Grade Appeal as directed by the . . . Dismissal Notice" is sufficient to survive a motion to dismiss under *Iqbal*. But even if it were, the exhibits attached to the Complaint render the claim highly implausible. The various emails, letters, notices, agendas, and investigation reports in the exhibits make no mention of Plaintiff ever stating, orally or in writing, that he had initiated any grade appeal before January 23, 2018. Although Plaintiff asserts that he informed Dean Overman on February 12, 2018, that he had initiated grade appeals, there is no mention of him doing so prior to the January 23 deadline. Accordingly, the Court finds that while it is possible Plaintiff initiated a grade appeal before January 23, it is not plausible, and so any count predicated on this assertion fails to state a claim.

Further, although the Court suspects amendment of these counts is futile, it is possible that Plaintiff possesses additional facts that, for whatever reason, he failed to include in the initial Complaint, and these facts might nudge his claims from possible to plausible. Accordingly, to ensure that this case is disposed of on the merits, Counts 1, 2, 4, 5, 6, 7, 8, 17, 18, and portions of Counts 11 and 16 are dismissed without prejudice.

## II.  Counts 3, 16, and 18 fail to state a claim for breach of contract.

Counts 3, 16, and 18 bring breach of contract claims. Under Missouri law, to state a viable claim for breach of contract, a complaint "'must establish the existence of a valid contract, the rights of the plaintiff and obligations of defendant under the contract, a breach by defendant, and damages resulting from the breach.'" *Gillis v. Principia Corporation*, 832 F.3d 865, 871 (8th Cir. 2016) (quoting *Lucero v. Curators of Univ. of Mo.*, 400 S.W.3d 1, 5 (Mo. Ct. App. 2013)). This means "'the complaint must, at minimum, cite the contractual provision allegedly violated. Generalized allegations of a contractual breach are not sufficient.'" *Id*. at 872 n.11 (quoting *Cummins Law Office, P.A. v. Norman Graphic Printing Co.*, No. CIV. 11-2061 RHK/FLN, 2012 WL 3430447, at *3 (D. Minn. Aug. 14, 2012)).

The Complaint fails to cite a specific contractual provision with respect to any of these counts. For example, Count 3 alleges in relevant part:

> 167. Institutions of higher education are responsible to ensure that contracts, including those implied and verbal, are fair, in good faith, and not unconscionable.
>
> 168. Sean had (and has) a valid express and/or implied contract with the SOD, which was subject to the Academic Policies, written directives of the SOD and its Faculty, and other related documents, (*see, e.g.*, without limitation, Exs. 1, 2 and 3) whereby Sean agreed to complete the SOD's pre-doctoral program requirements and pay tuition and the SOD would provide Sean with an education and a

6

> degree/certificate upon completion of program requirements (the "Academic Agreement").
>
> 169. The Academic Policy Violations and the Honor Code Violations, along with the Dismissal and the circumstances surrounding the issuance of the Final Grades themselves, each constitute a breach (collectively, the "Breaches" and each a "Breach") by the SOD of the Academic Agreement.

Compl. ¶¶ 167-169. While the Complaint claims numerous "express and/or implied" contracts exist, it does not cite a single provision Defendants allegedly breached. Counts 16 and 18 feature identical defects. Accordingly, the Court holds Counts 3, 16, and 18 fail to state a claim and are dismissed without prejudice.

### III. Count 9 fails to state a claim under Title II of the ADA.

Count 9 attempts to plead a violation of Title II of the Americans with Disabilities Act ("the ADA"), which "prohibits discrimination by public entities against individuals with disabilities." *Pottgen v. Missouri State High Sch. Activities Ass'n*, 40 F.3d 926, 930 (8th Cir. 1994). Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* (citing 42 U.S.C. § 12132 (1990)). To establish a Title II violation, Plaintiff must show that (1) he is a qualified individual with a disability; (2) he was denied a benefit or discriminated against by Defendants; and (3) that such denial or discrimination was "by reason of" his disability. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010).

Defendants contest the third element, spending two pages of their brief making detailed arguments. Suggestions in Support at 18-20 (Doc. 19). Plaintiff responds that "Plaintiff's Claims under Title II of the ADA are properly pled in Plaintiff's Complaint. Defendants are

7

simply ignoring the factual allegations, which are clearly and concisely set forth in the paragraphs 321-408 of Plaintiff's Complaint." Pl.'s Resp. at 30 (Doc. 35).

Plaintiff's response is so wanting the Court is tempted to treat this argument as conceded. *See Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004) (observing in the context of a motion for summary judgment that a district court is not obligated to sift through the record in search of some fact which might support the nonmoving party's claim). Nonetheless, to ensure this motion is decided on the merits, the Court has sifted through the entire Complaint and the attached exhibits for factual allegations supporting a Title II ADA claim.

After doing so, it holds Count 9 does not state a plausible ADA claim. Paragraphs 36 and 72 identify Plaintiff's disability as Attention Deficit Hyperactivity Disorder ("ADHD").[5] Paragraph 329 alleges Defendants discriminated against Plaintiff by giving him failing grades, accusing him of cheating, and violating his procedural rights in the process of dismissing him. The Complaint then attributes this to disability discrimination. Other paragraphs claim Defendants treated Plaintiff badly in some general way, for example, that they would "chastise, belittle, intimidate and degrade" him, and then conclude without evidentiary support that this was because of his disability. *See, e.g.*, Compl. ¶¶ 332, 334-335, 341. A few paragraphs assert some unnamed students who are not disabled engaged in unspecified behavior that was "much more egregious" than Plaintiff's and were "not treated in such a manner." *See, e.g,* Compl. ¶¶ 339-40, 345.

---

[5] Although an exhibit, a letter from a doctor who began seeing Plaintiff in January of 2018, states Plaintiff "suffers from major depressive disorder and attention deficit disorder," letter dated January 29, 2018, at 1 (Doc. 4-1), the Complaint itself does not allege Plaintiff suffers from major depressive disorder. Even if the failure to plead depression as a disability in the Complaint was an oversight, because the letter was not sent until January 29, 2018, it is doubtful that any Defendants were even aware in December of 2017—when they were allegedly taking the discriminatory actions against Plaintiff—that he suffered from depression.

These allegations are insufficient to state a plausible claim that Defendants treated Plaintiff adversely "by reason of" his disability. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Plaintiff's vague allegation that other students who did not have a disability were somehow treated differently lacks sufficient factual support to survive a motion to dismiss. The Complaint fares no better by combining a few colorful allegations, like Defendants chastised and belittled Plaintiffs, or Defendants "poisoned" the faculty against Plaintiff, with the wholly speculative conclusion that they did so on the basis of his disability. Nor can Plaintiff attempt to avoid dismissal by combining a few concrete factual allegations, such as that Defendants gave Plaintiff failing grades and accused him of cheating, with the still unsupported conclusion that they did so out of disability animus. These allegations are particularly insufficient in light of materials attached to the Complaint indicating Defendants gave Plaintiffs poor marks and accused him of cheating because he performed badly on tests and attempted to cheat.

Count 9 is dismissed without prejudice for failure to state claim.

## IV. Count 10 fails to state an ADA reasonable accommodation claim.

Count 10 alleges Defendants failed to provide reasonable accommodations to Plaintiff. It is the plaintiff's burden to plead that a reasonable modification exists. *See Hahn ex rel. Barta v. Linn County, IA*, 130 F. Supp. 2d 1036, 1056 (N.D. Iowa 2001). Although paragraph 369 claims he requested "reasonable accommodations in the form of additional time on exams and other related testing and projects for lab courses," the Complaint does not identify or explain exactly what the requested accommodations were. Compl. ¶¶ 365, 369-73, 379. This is problematic because another part of the Complaint, paragraph 72, states that "Sean has ADHD (Sean's

'Qualified Disability') and was granted additional time by the SOD on exams," a fact which rebuts the allegations in paragraph 369. (Emphasis added.)

Accordingly, Count 10 is dismissed without prejudice for failure to state a claim.

## V. Count 11 fails to state an ADA retaliation claim.

Count 11 alleges Defendants violated Title V of the ADA by retaliating against Plaintiff for requesting an accommodation. Compl. ¶ 379. Where, as here, there is no direct evidence of retaliation, the plaintiff must plead that (1) he requested an accommodation; (2) the defendant took an adverse action against him; and (3) there was a causal connection between the adverse action and the request. *See EEOC v. Product Fabricators, Inc.*, 763 F.3d 963, 972 (8th Cir. 2014). The causal connection between the adverse action and the request must be "a but-for causal connection." *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 758-59 (8th Cir. 2016).

In the present case, the Court holds Plaintiff's complaint fails to state a claim because his allegations do not establish "but-for" causation. The Complaint makes a conclusory allegation that the failing grades, cheating allegations, and everything else Defendants allegedly did to Plaintiff was in whole, or at least in part, due to retaliation. Compl. ¶ 380. These allegations lack sufficient factual content to establish facial plausibility and allow a reasonable inference that Defendants are liable for the misconduct alleged. Hence, they fail to state a claim.

Count 11 is dismissed without prejudice.

**VI. Counts 12 and 13 fail to state a claim for violation of Title VI of the Civil Rights Act.**

Counts 12 and 13 allege disparate treatment and retaliation in violation of Title VI of the Civil Rights Act of 1964. "Title VI of the Civil Rights Act of 1964 provides: 'No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.'" *Mumid v. Abraham Lincoln High Sch.*, 618 F.3d 789, 793 (8th Cir. 2010) (quoting 42 U.S.C. § 2000d). To successfully plead a Title VI claim, a plaintiff must allege intentional discrimination. *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001) ("Title VI itself directly reaches only instances of intentional discrimination.").

The Complaint alleges these two counts "are based on race and ethnicity,"[6] and that in 2015, 2016, and 2017, people with brown skin were disproportionately dismissed from the SOD. Compl. ¶¶ 415, 417, 420- 28. Both counts fail to state a Title VI claim because both fail to plead specific facts from which the Court could conclude Defendants' actions were motivated by intentional discrimination.

Counts 12 and 13 are dismissed without prejudice.

**VII. The defamation claim, Count 14, is dismissed with prejudice.**

Count 14 alleges the SOD and Dr. Godley defamed Plaintiff by falsely accusing him of cheating. Compl. ¶¶ 443-55. The SOD and Dr. Godley argue—and Plaintiff does not dispute[7]—that this claim is barred against the SOD by the doctrine of sovereign immunity, and that the

---

[6] In fact, the Complaint alleges Plaintiff has "brown" skin and does not identify his ethnicity. Compl. ¶ 14.

[7] Although Plaintiff's Response makes blanket statements like "the jurisdiction of this Court is proper as Plaintiff's claims are not barred by either Eleventh Amendment Immunity, Qualified Immunity, nor Official Immunity," it does not discuss Count 14 specifically, nor does it anywhere contain the word "defamation." Resp. at 1.

doctrine of qualified immunity shields Dr. Godley from liability. Given that this argument is conceded, Count 14 is dismissed with prejudice.

**VIII. The tortious interference claim, Count 15, is dismissed with prejudice.**

Count 15 alleges Dr. Godley[8] falsely accused Plaintiff of academic fraud in order to illegally interfere in Plaintiff's "Academic Agreement" with the SOD, causing Plaintiff to be dismissed from the SOD and lose tuition and fees, lost wages, etc. Again, Dr. Godley argues— and Plaintiff does not dispute[9]—that the doctrine of qualified immunity shields Dr. Godley from liability. This argument is conceded and Count 15 is dismissed with prejudice.

**IX. The Court declines to rule on Defendants' remaining arguments.**

The Court acknowledges Defendants have argued the Complaint should be dismissed for a variety of additional reasons. The Court declines to rule on these at the present time. Should Plaintiff file an amended complaint, Defendants may renew their arguments.

**Conclusion**

For the reasons discussed above, Defendants' motion to dismiss (Doc. 16) is GRANTED. Counts 1-13, and 16-19 are dismissed without prejudice. Counts 14 and 15 are dismissed with prejudice.

**IT IS SO ORDERED.**

Date:  March 22, 2019   /s/ Greg Kays
                        GREG KAYS, JUDGE
                        UNITED STATES DISTRICT COURT

---

[8] Although the heading for Count 15, "Count 15: Tortious Interference (Defendants)," suggests it is brought against all Defendants, the allegations in paragraphs indicate this count is brought against Dr. Godley only.

[9] Plaintiff's Response does not discuss Count 15 specifically, nor does it mention "tortious interference."